**MCM LAW GROUP, P.C.**
Cesar O. Montoya (SBN: 320291)
206 W. 4th St Suite 437
Santa Ana, CA 92701
Phone: (714) 732-0287

Attorney for Petitioner

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| JOSEHP ROSALES-ZUNIGA,<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security;<br><br>TODD BLANCHE, Acting Attorney General of the United States;<br><br>DAVID J. VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement;<br><br>ERNESTO SANTACRUZ JR., Acting Director, Los Angeles ICE Field Office; and<br><br>WARDEN, Adelanto ICE Processing Center<br><br>Respondents. | Case No.<br><br>**PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS** |

## I. INTRODUCTION

1. Petitioner, JOSEHP ROSALES-ZUNIGA ("Petitioner"), through undersigned counsel, respectfully petitions this Honorable Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging his ongoing unlawful detention by the Department of Homeland Security ("DHS"), the Department of Justice ("DOJ"), and U.S. Immigration and Customs Enforcement ("ICE") (collectively, "Respondents"). Petitioner entered the United States on July 17, 2023, when he was sixteen years old. He did not evade immigration authorities; he presented himself to them in Texas and was taken into federal custody as an unaccompanied minor. On August 11, 2023, the Office of Refugee Resettlement ("ORR") released him from federal custody to the care of his father in Ventura, California. Exhibit A. He thereafter lived openly in that community for approximately two years and eight months, filed an affirmative application for asylum in 2024, Exhibit B, and has an individual merits hearing scheduled before the Immigration Court on October 9, 2026. Exhibit C. In April 2026 Respondents took him into immigration custody. He has been detained ever since. Based on the records presently available to Petitioner and counsel, that detention was imposed without advance notice, without any pre-deprivation hearing, and without any individualized determination by a neutral decisionmaker that his detention is

necessary to address danger or risk of flight. That detention violates the Immigration and Nationality Act ("INA") and the Due Process Clause of the Fifth Amendment.

2. **Petitioner has no criminal conviction. His sole criminal matter was placed into judicial diversion without a guilty plea or conviction, and he has no other criminal history.** Petitioner neither omits that matter nor minimizes it. On or about March 31, 2026, Petitioner was arrested by the Ventura Police Department following a bicycle pursuit. The case ultimately proceeded under California Penal Code § 148(a)(1). On April 2, 2026, the state court granted judicial diversion under California Penal Code § 1001.90. Petitioner entered no plea of guilty, no judgment of conviction was entered, and the diversion is scheduled for completion on October 2, 2026 if he complies with its terms. Exhibit D.

3. The constitutional question this Petition presents is not whether that arrest occurred. It is whether Respondents could constitutionally revoke liberty the federal government itself conferred — and that Petitioner had held for more than two and one-half years — without first affording him notice and an individualized determination before a neutral decisionmaker that the incident, and the disposition it actually received, established present danger or risk of flight warranting

confinement. Three facts frame that question. **The federal government itself decided in August 2023 that Petitioner should live in the community with his father; his asylum application is set for an individual merits hearing on October 9, 2026, at which he will seek the relief he himself requested; and his sole criminal matter is in judicial diversion scheduled for completion on October 2, 2026.** Each gives him a concrete reason to remain available to the courts rather than to abscond, and, based on the records presently available to Petitioner and counsel, none was weighed by a neutral decisionmaker before Respondents detained him.

4. Courts have increasingly recognized that **when the government releases a noncitizen, that release creates a heightened liberty interest that cannot be extinguished without meaningful procedural safeguards**. *See M.B. v. Noem*, No. 1:26-cv-00005-DJC-AC, 2026 WL 74155 (E.D. Cal. Jan. 9, 2026); *Diaz Hernandez v. Blanche*, No. 5:26-cv-04187-AJR, 2026 WL 2281008 (C.D. Cal. Aug. 4, 2026); *Aura Nohemi Palencia-Vargas v. Rios*, No. 5:26-cv-04471-DTB, 2026 WL 2448311, at *3–4 (C.D. Cal. Aug. 20, 2026); *Ranvir S. v. Andrews*, No. 1:26-cv-00774-TLN-CSK, 2026 WL 2475510, at *1–2 (E.D. Cal. Aug. 24, 2026). That interest is independently established here by the length of Petitioner's residence and the ties he built in Ventura County while the government knew

where he lived. *See Diaz Hernandez*, 2026 WL 2281008, at *3; *Vallejo v. Warden*, No. 1:26-cv-05320-DAD-SCR, 2026 WL 2391062, at *2 (E.D. Cal. Aug. 14, 2026).

5. Respondents cannot justify the detention by recharacterizing Petitioner as an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2). On July 30, 2026, the Ninth Circuit held that noncitizens apprehended in the interior of the United States are detained under 8 U.S.C. § 1226(a), not 8 U.S.C. § 1225(b)(2)(A). *See Rodriguez-Vazquez v. Bostock*, --- F.4th ---, 2026 WL 2196424, at *3 (9th Cir. July 30, 2026). Petitioner was not apprehended at the border in April 2026, and he was not intercepted while presenting himself for admission. He was taken into custody in the interior of the United States, in Ventura County, approximately two years and eight months after federal authorities released him from custody into this country.

6. These circumstances also create a substantial risk of an erroneous deprivation of liberty. Petitioner remains incarcerated while his asylum application is pending and his individual merits hearing is not scheduled until October 9, 2026, without any determination by a neutral adjudicator that his continued detention serves any legitimate governmental interest.

7. Petitioner therefore seeks immediate release. Absent immediate intervention by this Court, Petitioner will continue to suffer irreparable harm through continued unlawful detention. The ongoing deprivation of liberty — without constitutionally adequate procedures — demands urgent judicial review and prompt relief.

**II. JURISDICTION**

8. This action arises under the Constitution of the United States and the INA, 8 U.S.C. § 1101, et seq.

9. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause). This Court may grant relief pursuant to 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and the All Writs Act, 28 U.S.C. § 1651.

10. Federal courts retain jurisdiction over constitutional challenges to immigration detention. *See Jennings v. Rodriguez*, 583 U.S. 281 (2018). Petitioner seeks only individualized habeas relief, which is expressly preserved under 8 U.S.C. § 1252(f)(1). That provision prohibits lower courts from enjoining or restraining the operation of certain immigration statutes on a classwide basis, but it explicitly preserves relief "with respect to the application of such provisions to an

individual alien." 8 U.S.C. § 1252(f)(1). The Supreme Court's decision in *Garland v. Aleman Gonzalez* did not eliminate federal courts' authority to grant individualized habeas relief in detention cases. Instead, it limited only classwide injunctions that restrain the operation of detention statutes. Where Respondents lack constitutional authority to continue detention without a legally adequate custody determination, this Court retains full power to order individualized relief, including release or a constitutionally compliant bond hearing. *See Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022).

11. Section 1226(e) is no bar. It "does not limit habeas jurisdiction over constitutional claims or questions of law." *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011). Nor does 8 U.S.C. § 1252(a)(5) or (b)(9) divest this Court of jurisdiction. Petitioner does not challenge any removal determination, and he does not ask this Court to adjudicate the merits of his asylum claim. He challenges only the lawfulness of his custody, which is the classic office of the writ.

## III. VENUE

12. Venue is proper in this district under 28 U.S.C. § 1391(e)(2). Petitioner is detained by Respondents at the **Adelanto ICE Processing Center** in Adelanto, California, which lies within this District and Division, and the officer in charge of custody decisions in Petitioner's case is located within this judicial district.

Petitioner is subject at any time to transfer to another ICE detention facility. Undersigned counsel has no notice of any planned transfer and requests that Petitioner remain within the jurisdiction of this Court pending resolution of this Petition.

## IV. PARTIES

13. Petitioner **JOSEHP ROSALES-ZUNIGA**, **A-Number 241-332-836**, is a native and citizen of Honduras. He was born on August 13, 2006. He entered the United States on July 17, 2023, at the age of sixteen, presented himself to immigration authorities in Texas, and was taken into federal custody. On August 11, 2023, ORR released him from federal custody to his father in Ventura, California. Immediately before the detention challenged here he resided in Ventura, California. He is currently detained at the **Adelanto ICE Processing Center** in Adelanto, California, in the custody and under the direct control of Respondents and their agents.

14. Respondent MARKWAYNE MULLIN is sued in his official capacity as Secretary of DHS. In that capacity, he is responsible for the implementation and enforcement of the INA and oversees ICE, the component agency responsible for Petitioner's detention. He is empowered to carry out any administrative order against Petitioner and is a legal custodian of Petitioner.

15. Respondent TODD BLANCHE is sued in his official capacity as Attorney General of the United States and senior official of the DOJ. In that capacity he oversees the Executive Office for Immigration Review ("EOIR"), which administers the immigration courts and the Board of Immigration Appeals ("BIA" or "Board").

16. Respondent DAVID J. VENTURELLA is sued in his official capacity as Acting Director of ICE. He is a legal custodian of Petitioner and has authority to release him.

17. Respondent ERNESTO SANTACRUZ JR. is sued in his official capacity as Acting Director of the Los Angeles ICE Field Office. He is charged with the detention and removal of noncitizens falling under the jurisdiction of that Field Office and is a legal custodian of Petitioner.

18. Respondent WARDEN, Adelanto ICE Processing Center, is sued in his or her official capacity as the warden of the facility where Petitioner is held. The Warden has immediate physical custody of Petitioner pursuant to a contract with ICE and is Petitioner's immediate custodian. As held by the Ninth Circuit, in habeas corpus cases the proper Respondent is the warden of the detention facility where the immigration detainee is held. *See Doe v. Garland*, 109 F.4th 1188, 1197 (9th Cir. 2024).

## V. STATEMENT OF FACTS

### A. Petitioner Entered the United States as a Minor and Was Placed in Federal Custody.

19. Petitioner was born on August 13, 2006 in Honduras.

20. On July 17, 2023, Petitioner entered the United States. He was sixteen years old. He did not evade immigration authorities. He presented himself to immigration authorities in Texas and was taken into federal custody.

21. Because Petitioner was a minor without a parent or legal guardian available to provide care and physical custody at the time of his apprehension, he was placed in federal custody and his care was transferred to ORR.

### B. ORR Released Petitioner to His Father in Ventura on August 11, 2023.

22. On August 11, 2023, after Petitioner had been vetted while in federal custody, ORR released Petitioner from that custody to the care of his father in Ventura, California. Exhibit A.

23. That release was an affirmative decision by the federal government. Petitioner did not obtain his liberty by evading the government's attention. The government took him into custody, evaluated him and his proposed sponsor,

approved the placement, identified where he would live, and then released him to it.

24. Petitioner characterizes that release as what the presently verified records establish: a release from federal custody to an approved sponsor. Petitioner does not presently allege that DHS granted him parole under 8 U.S.C. § 1182(d)(5) or issued parole documentation, and he does not rely on any such characterization.

**C. Petitioner Lived in the Community and Pursued Asylum Relief.**

25. From August 11, 2023 until his detention in April 2026 — a period of approximately two years and eight months — Petitioner lived in the community in Ventura, California, at an address known to the federal government.

26. During that period Petitioner was a teenager living with and supported by family. His father is in the United States.

27. Based on the records presently available to Petitioner and counsel, at no time between August 11, 2023 and April 2026 did DHS or ICE revoke his release, impose new conditions on it, notify him that his release was in question, or take any step to return him to custody.

**D. Petitioner's Pending Asylum Proceedings and October 9, 2026 Individual Hearing.**

28. In 2024, Petitioner filed a Form I-589, Application for Asylum and for Withholding of Removal. The matter was thereafter referred to the Immigration Court. Exhibits B and C.

29. Petitioner's asylum application remains pending before the Immigration Court. He is scheduled for an individual merits hearing on October 9, 2026. That hearing is the proceeding at which Petitioner will seek adjudication of the asylum relief he affirmatively applied for. Failure to appear would forfeit the claim he has pursued since 2024 and would be directly contrary to his own interest in that proceeding.

30. Petitioner is not subject to any order of removal. Should the Immigration Judge deny his applications for relief at the October 9, 2026 hearing, Petitioner intends to reserve appeal and to file a timely appeal with the Board of Immigration Appeals. Appeals to the Board frequently require many months, and in some cases longer, to resolve, and further review before the United States Court of Appeals for the Ninth Circuit may be available thereafter. The approach of Petitioner's individual hearing therefore does not mean that his removal is imminent, or that DHS would be able to execute a removal order shortly after that hearing.

**E. Petitioner's Sole Criminal Matter Resulted in Judicial Diversion and No Conviction.**

31. Petitioner has one criminal matter. He addresses it directly.

32. According to the Ventura Police Department narrative presently available to counsel, on March 31, 2026 at approximately 1955 hours an officer on patrol observed Petitioner riding an electric bicycle near Olive Street and Harrison Avenue in Ventura. The officer reported that Petitioner failed to stop at a stop sign, rode against the direction of traffic, and rode away from the officer through a parking lot and along city streets after the officer activated his lights and siren. The officer reported that Petitioner stopped near Santa Clara Street, was detained, and stated that he had fled after running the stop sign and seeing the patrol vehicle. Petitioner was booked into the Ventura County Jail. Exhibit E.

33. The narrative presently available to counsel does not allege that Petitioner used or possessed any weapon, that any person was injured, that any collision occurred, that any property was damaged, or that Petitioner threatened or physically resisted the officer.

34. Records presently available to counsel refer to California Vehicle Code §§ 2800.4 and 2800.2(a) in connection with the arrest and booking. Those references identify allegations made at the time of arrest. They are not findings, and no conviction was entered on them. The matter that proceeded in state court proceeded under California Penal Code § 148(a)(1).

35. **On April 2, 2026, the state court granted Petitioner judicial diversion under California Penal Code § 1001.90. Petitioner did not enter a plea of guilty. No judgment of conviction was entered. Petitioner presently has no criminal conviction arising from that matter.** The diversion is scheduled to be completed on October 2, 2026 if Petitioner successfully complies with its terms. Exhibit D.

36. Petitioner has no other criminal record. He has no other arrest, no other charge, and no conviction of any offense.

37. Petitioner's continued compliance with the terms of diversion is itself a reason to appear and remain in the jurisdiction: his detention, and any removal, would place at risk the successful completion scheduled for October 2, 2026.

**F. ICE Re-Detained Petitioner in April 2026.**

38. Petitioner was taken into ICE custody in April 2026 in connection with the state court matter. Petitioner presently understands that ICE officers took him into custody as he was leaving the Ventura courthouse, at a time when he expected to be released.

39. Petitioner was thereafter transferred to the Adelanto ICE Processing Center, where he remains detained. He has been continuously in ICE custody since April 2026.

40. Petitioner was not apprehended at the border. He was not intercepted while presenting himself for admission. He was taken into custody in the interior of the United States, in Ventura County, California, approximately two years and eight months after federal authorities released him from custody into this country.

**G. Process Provided Before and After Re-Detention.**

41. Based on the records presently available to Petitioner and counsel, Petitioner received no advance notice that Respondents intended to take him into custody, no opportunity to be heard before that custody began, and no determination by a neutral decisionmaker — before he was detained — that his detention was necessary because he presented a danger to the community or a risk of flight that could not be addressed by conditions of release.

42. Based on the records presently available to Petitioner and counsel, Respondents have not identified to Petitioner the statutory provision under which they claim authority to detain him, and counsel has not obtained a Form I-286 Notice of Custody Determination, a Form I-200 warrant of arrest, a Form I-213, or any other custody document issued in connection with the April 2026 arrest.

43. The precise circumstances of ICE's decision and preparation to assume custody remain subject to confirmation through ICE and local custody records. Petitioner does not presently allege that Respondents planned the arrest in advance

or coordinated it with the state court or the Ventura County Sheriff. If records establish that a detainer was lodged, that a warrant issued before the arrest, or that officers were dispatched to the courthouse to await Petitioner, counsel will supplement this Petition accordingly.

44. Based on the information presently available, no Immigration Judge or other neutral decisionmaker has made an individualized custody determination concerning Petitioner, either before or since his detention.

**H. Current Detention and Release Plan.**

45. Petitioner remains detained at the Adelanto ICE Processing Center. His asylum application remains pending, and his individual merits hearing remains set for October 9, 2026.

46. Petitioner has family and support ties in California. His father, to whom the federal government itself released him in 2023, is in the United States. An aunt supports him, and he is financially dependent on her.

47. Petitioner is willing to comply with any reasonable conditions of release this Court or an Immigration Judge may impose, including reporting requirements, address reporting, and electronic monitoring if ordered.

## VI. EXHAUSTION OF ADMINISTRATIVE REMEDIES

48. Petitioner acknowledges that, under *Rodriguez-Vazquez v. Bostock*, an Immigration Judge may now exercise custody jurisdiction over a person detained under 8 U.S.C. § 1226(a). That does not defeat the claim presented here. Petitioner does not contend that administrative custody review is unavailable in the abstract. He contends that Respondents deprived him of an established liberty interest before affording any neutral process at all. **A custody hearing held only after Petitioner has already been detained cannot retroactively provide the notice and neutral pre-deprivation determination that the Fifth Amendment required before Respondents took his liberty.**

49. Administrative exhaustion is not statutorily required in proceedings under 28 U.S.C. § 2241. The Ninth Circuit has repeatedly recognized that "[t]he exhaustion requirement is prudential, rather than jurisdictional, for habeas claims." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Although a district court may require exhaustion where agency expertise is necessary to develop a proper record, where administrative review may allow the agency to correct its own errors, or where exhaustion would promote judicial efficiency, **exhaustion may be waived where administrative remedies are inadequate or ineffective, pursuit of those remedies would be futile, irreparable injury would result, or the**

**proceedings would be void.** *Id.*; *see also Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004).

50. Petitioner's claims are constitutional and legal in nature. **Petitioner does not challenge the validity of any removal proceeding, the merits of his pending asylum application, or Respondents' authority to pursue removal proceedings against him.** He does not ask this Court to determine his eligibility for asylum or any other form of relief. Rather, Petitioner challenges Respondents' decision to revoke the liberty the federal government itself conferred, and that he held for approximately two years and eight months, without first providing constitutionally adequate pre-deprivation procedures. Whether Respondents violated the Fifth Amendment by depriving Petitioner of that protected liberty interest without advance notice or a meaningful opportunity to be heard presents a constitutional question beyond the competence of the immigration courts.

51. The administrative process is incapable of providing the relief sought here. **Neither an Immigration Judge nor the Board possesses authority to adjudicate Petitioner's constitutional challenge, to determine whether Respondents violated the Due Process Clause by detaining him without adequate procedural safeguards, or to grant habeas corpus relief ordering his release.** Nor can either enjoin future re-detention. Requiring further administrative

exhaustion would therefore neither eliminate the need for judicial review nor permit the agency to provide the relief sought in this Petition.

52. Nor would further administrative proceedings meaningfully develop the dispositive facts. The facts material to this Petition are documentary: Petitioner entered as a minor and was placed in federal custody; ORR released him to his father on August 11, 2023; he lived in the community until April 2026; his asylum application is pending with an individual hearing set for October 9, 2026; his sole criminal matter was resolved by judicial diversion with no guilty plea and no conviction; and, based on the records presently available to Petitioner and counsel, he received no pre-deprivation notice, hearing, or individualized custody determination. The issues presented are therefore overwhelmingly constitutional and legal.

53. Critically, Petitioner's principal constitutional claim concerns an injury that was complete before any administrative custody proceeding could have occurred. His primary requested remedy is restoration of the liberty Respondents terminated in April 2026 without pre-deprivation process. Although Petitioner requests a prompt § 1226(a) custody hearing in the alternative, such a hearing would provide only post-deprivation process and therefore would not retroactively cure the absence of the process constitutionally required before his detention.

54. Finally, requiring further exhaustion would inflict precisely the type of irreparable injury recognized by courts considering challenges to continued immigration detention. **Petitioner's constitutional injury occurred when Respondents deprived him of his liberty without first providing constitutionally adequate process, and that injury continues with each additional day of detention.** Accordingly, Petitioner has satisfied, or alternatively is excused from, any prudential exhaustion requirement applicable under 28 U.S.C. § 2241, and this Court should reach the merits of his constitutional challenge.

## VII. LEGAL ARGUMENT

### A. Petitioner Acquired a Substantial Protected Liberty Interest Through the Federal Government's Own Decision to Release Him and Through Approximately Two Years and Eight Months of Liberty in the Community.

55. While noncitizens located outside the United States are not granted the full protection of the Constitution, **the Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.** *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."). "Freedom from

imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." *Id.* at 690.

56. The Supreme Court in *Jennings v. Rodriguez* addressed only statutory interpretation and expressly declined to resolve the constitutional questions surrounding immigration detention. *Jennings v. Rodriguez*, 583 U.S. 281, 312 (2018). Courts within this Circuit have recognized that *Jennings* left intact as-applied constitutional challenges to detention. *See Cruz-Zavala v. Barr*, 445 F. Supp. 3d 571, 578–79 (N.D. Cal. 2020).

57. A protected liberty interest can arise from a conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147–49 (1997). District courts throughout the Ninth Circuit have recognized that **once the government elects to release a noncitizen, that individual acquires a concrete interest in remaining free from physical restraint, and that interest may not be extinguished arbitrarily.** *See Oli v. Andrews*, No. 1:26-cv-00477-DJC-AC, 2026 U.S. Dist. LEXIS 20443, at *5 (E.D. Cal. Jan. 30, 2026) ("[E]ven when the government initially has the discretion to detain or release someone from custody, once the government decides to release them, that individual gains a constitutionally protected liberty interest in remaining out of custody," quoting *Morrissey v.*

*Brewer*, 408 U.S. 471, 482 (1972)); *Meneses v. Santacruz*, 811 F. Supp. 3d 1158, 1162 (C.D. Cal. 2025); *Nola v. Dep't of Homeland Sec.*, No. 5:26-cv-02180-MBK, 2026 U.S. Dist. LEXIS 106210, at *21 (C.D. Cal. May 13, 2026).

58. That principle governs here. Petitioner's liberty was not the product of the government's inattention. The federal government took him into custody as a sixteen-year-old, retained him in ORR custody, evaluated and approved a sponsor, identified the community in which he would live, and then affirmatively released him to his father on August 11, 2023. Every element of his subsequent life in Ventura — his address, his household, his family — existed because the government decided it should.

59. **The interest does not depend solely on the administrative label affixed to the release.** In *Zapata v. Kaiser*, the Northern District of California held that noncitizens released on recognizance are likewise entitled to a hearing before re-detention, explaining that the constitutional protection attaches to the fact of release itself regardless of the statutory mechanism by which release occurred. *Zapata v. Kaiser*, 801 F. Supp. 3d 919 (N.D. Cal. 2025). Petitioner states the limits of that argument precisely. He does not contend that release from ORR custody to a sponsor is legally equivalent to a grant of parole under the INA, and he does not allege that DHS granted him parole. He contends that the constitutionally salient

facts are that the federal government held him, decided to release him into the community, and knew where he lived for the entire period that followed.

60. Petitioner's liberty interest is independently established by the life he built in this country, without regard to the mechanism of his release. Recent decisions of this District and the Eastern District hold that **a protected liberty interest in freedom from detention need not depend on a prior discretionary release by immigration authorities.** In *Diaz Hernandez v. Blanche*, the court held on materially similar facts — a noncitizen apprehended in the interior, never previously released by the agency — that "Petitioner developed a substantial liberty interest in remaining out of custody based on the length of time he lived in the United States and the ties he built to the community over the past several years." No. 5:26-cv-04187-AJR, 2026 WL 2281008, at *3 (C.D. Cal. Aug. 4, 2026). *Accord Vallejo v. Warden*, No. 1:26-cv-05320-DAD-SCR, 2026 WL 2391062, at *2 (E.D. Cal. Aug. 14, 2026) ("Even though Petitioner was not previously released at the discretion of immigration officials, she has a general liberty interest in freedom from detention."); *Tinoco v. Noem*, 818 F. Supp. 3d 1141, 2025 WL 3567862, at *6 (E.D. Cal. 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty.").

61. *M.B. v. Noem*, *Palencia-Vargas v. Rios*, and *Ranvir S. v. Andrews* apply the same framework to re-detention. *M.B. v. Noem*, No. 1:26-cv-00005-DJC-AC, 2026 WL 74155 (E.D. Cal. Jan. 9, 2026) (release creates an expectation of continued liberty that cannot be revoked absent appropriate procedural safeguards); *Palencia-Vargas v. Rios*, No. 5:26-cv-04471-DTB, 2026 WL 2448311, at *3–4 (C.D. Cal. Aug. 20, 2026) (noncitizen released after presenting at the border developed a substantial liberty interest; re-detention without notice and a pre-detention hearing violated procedural due process; immediate release ordered); *Ranvir S. v. Andrews*, No. 1:26-cv-00774-TLN-CSK, 2026 WL 2475510, at *1–2 (E.D. Cal. Aug. 24, 2026).

62. Petitioner's interest accrued through the passage of time and through the government's own conduct. The government took him into custody as a minor, evaluated his proposed placement, elected to release him to his father, and thereafter permitted him to remain at liberty in a known community for approximately two years and eight months while he pursued the asylum claim he had filed.

**B. Under *Rodriguez-Vazquez v. Bostock*, Petitioner's Interior Detention Is Governed by 8 U.S.C. § 1226(a), Not 8 U.S.C. § 1225(b)(2).**

63. Petitioner does not presently know the statutory provision Respondents assert as the basis for his custody, because counsel has not obtained the custody record.

64. On July 30, 2026, the Ninth Circuit held "that aliens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." *Rodriguez-Vazquez v. Bostock*, --- F.4th ---, 2026 WL 2196424, at *3 (9th Cir. July 30, 2026). That holding binds this Court and the immigration courts alike.

65. On the facts presently known, Petitioner falls within that rule. He was taken into custody in April 2026 in Ventura County, California, approximately two years and eight months after federal authorities released him from custody into the community. He was not apprehended at the border, and he was not intercepted while presenting himself for admission. Whatever may be said of the manner of his July 2023 entry, the detention challenged in this Petition is an interior apprehension governed by § 1226(a), not § 1225(b)(2).

66. *Rodriguez-Vazquez* also forecloses the rationale that has made administrative custody relief unavailable to noncitizens in Petitioner's position. Under *Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025), the Board treated every noncitizen who was not admitted as an "applicant for admission" subject to

mandatory detention under § 1225(b)(2), and immigration judges accordingly declined jurisdiction to conduct custody redeterminations. A decision clarifying which subsection authorizes Petitioner's custody does not supply the process that was owed before that custody began, and it does not restore the liberty already taken.

**C. Due Process Required Notice and an Individualized Determination Before a Neutral Decisionmaker Before Respondents Revoked Petitioner's Liberty.**

67. Once a protected liberty interest is established, the question becomes what process was due and when. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). That question is answered by weighing three factors: **the private interest affected; the risk of erroneous deprivation through the procedures used and the probable value of additional safeguards; and the Government's interest, including the burden additional process would impose.** *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

68. Where a deprivation is predictable, where pre-deprivation process is not impracticable, and where the conduct is authorized rather than random and unauthorized, the Constitution requires that the process come *before* the deprivation. *Zinermon v. Burch*, 494 U.S. 113, 132, 136–39 (1990). Those

conditions are satisfied on the facts presently known. Respondents' decision to take Petitioner into custody was made by officers acting within their authority, not as a random or unauthorized act; and it could have been preceded by the very custody hearing the agency routinely provides.

***1. The private interest is at its maximum.***

69. The interest at stake is "the most elemental of liberty interests — the interest in being free from physical detention." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). It is "unquestionably substantial." *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1207 (9th Cir. 2022); *United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.").

70. Measured on its own terms, the interest here is substantial. Petitioner entered as a sixteen-year-old and was placed in federal custody. The federal government evaluated and approved his placement and released him to his father on August 11, 2023. He then lived in the community in Ventura, California for approximately two years and eight months, at an address known to the government. He filed an affirmative application for asylum, which remains pending, and he has an individual merits hearing scheduled for October 9, 2026. His father is in the

United States, and an aunt supports him and on whom he is financially dependent. He has no criminal conviction. These are the kinds of ties on which courts have grounded a substantial liberty interest. *Diaz Hernandez*, 2026 WL 2281008, at *3; *Palencia-Vargas*, 2026 WL 2448311, at *3; *Ranvir S.*, 2026 WL 2475510, at *1–2; *Tinoco*, 2025 WL 3567862, at *6.

71. Petitioner's youth at the time of release sharpens rather than dilutes that interest. The government did not merely tolerate his presence. It assumed responsibility for a minor, determined that placement with his father was appropriate, and delivered him into that household. The liberty Respondents revoked in April 2026 is liberty the federal government itself constructed.

72. *Saravia v. Sessions* describes the same interest on closely comparable facts. The petitioners there entered the United States as unaccompanied minors, were placed in ORR custody, and were released by ORR to family sponsors, often a parent; ICE later re-arrested them. The court explained that the resulting liberty deprivation "is not the same as when someone is caught coming across the border and detained in the nearest facility," because "[t]he federal government has already made a determination that minors like A.H. should not be detained, and has therefore made a decision to place them with a parent or other sponsor in the community." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1195–96 (N.D. Cal. 2017).

Petitioner does not overstate the parallel. He is now an adult, he is held by ICE rather than ORR, and the statutory placement framework that governed his 2023 release does not govern his present custody. But the fact that generated the liberty interest in *Saravia* — a considered federal decision that this person should live in the community with a family member rather than in custody — is present here, and no later federal determination has superseded it.

***2. The risk of erroneous deprivation was, and remains, high, and additional safeguards would have substantial value.***

73. The second factor ordinarily requires a court to predict how likely the challenged procedure is to produce error. **Based on the records presently available to Petitioner and counsel, the procedure Respondents used before detaining Petitioner was no procedure at all.** Petitioner received no notice that his liberty was to be taken, no opportunity to be heard, and no hearing of any kind. Any decision to detain him was made unilaterally by officers of the enforcing agency. **No neutral decisionmaker reviewed that determination before Petitioner was jailed.**

74. The central factual question bearing on danger and flight risk in this case is precisely the kind of question a neutral adjudicator exists to resolve. Petitioner was arrested on or about March 31, 2026. The state court that had the matter before

it, with the police report and the charging decision in hand, granted judicial diversion on April 2, 2026. Petitioner entered no guilty plea. No conviction was entered. Whether that incident nevertheless establishes that Petitioner presently poses a danger to the community, or a risk of flight that conditions of release cannot address, is a contested and fact-bound judgment. It is not self-evident from the fact of an arrest, and an arrest is not an adjudication.

75. Petitioner does not contend that the arrest proves he is not dangerous. He contends that the question required an individualized answer from someone other than the officers who decided to detain him. **An allegation is not a finding.** Where the only decisionmaker is the enforcing agency, and where the underlying state proceeding ended without any plea or conviction, the risk that detention rests on an unexamined inference is substantial. *See Palencia-Vargas*, 2026 WL 2448311, at *4 (finding a significant risk of erroneous deprivation where the petitioner had been released and received no pre-detention hearing); *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO (HC), 2025 U.S. Dist. LEXIS 183995, at *15 (E.D. Cal. Sept. 18, 2025).

76. Nor, based on the records presently available, has any adjudicator weighed the facts that cut the other way: that the federal government itself vetted and approved Petitioner's placement; that he remained at a known address for

approximately two years and eight months; that his asylum application is pending with an individual hearing set for October 9, 2026, giving him every reason to appear; that he is subject to terms of diversion scheduled for completion on October 2, 2026; and that conditions short of detention were never considered. Those facts bear directly on the only regulatory interests that could justify confinement — danger and flight risk.

77. *Saravia* illustrates concretely how an unreviewed agency characterization of a criminal record produces error. The minor in that case had two prior encounters with the criminal justice system, both of which were adjourned in contemplation of dismissal — one after he completed a pre-plea community service program. The summary DHS provided to ORR misstated the date of those charges and "did not acknowledge that all of A.H.'s charges had been adjourned in contemplation of dismissal." 280 F. Supp. 3d at 1179–80. Petitioner's disposition is of the same character: a pre-plea diversion resulting in no conviction. Whether that disposition is accurately described in whatever record Respondents relied upon in deciding to detain him is presently unknown to Petitioner and counsel, and no neutral decisionmaker has examined it.

78. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209–10 (9th Cir. 2022), does not point the other way. The Ninth Circuit there found a small risk of erroneous

deprivation because the petitioner "was detained under § 1226(a) and thus received numerous procedural protections, including individualized custody determinations and right to seek additional bond hearings." **Based on the records presently available to Petitioner and counsel, Petitioner has received none of those protections — not before his detention, and not since.**

***3. The Government's interest in detaining first and hearing later is minimal.***

79. The Government's legitimate interests are in ensuring appearance at removal proceedings and in protecting the public. Petitioner does not dispute that those interests are legitimate, and he does not dispute that the March 31, 2026 incident is a fact the Government is entitled to weigh. But those interests are served only where an individualized determination establishes that detention is actually necessary to secure them. "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by bond or alternative conditions." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). A hearing is the mechanism by which the Government's interests are vindicated, not defeated: if the Government can show that detention is necessary, a hearing will establish it.

80. Nor can Respondents ground that interest in the imminence of Petitioner's removal. Petitioner has no removal order. And if the Immigration Judge denies relief on October 9, 2026, a timely appeal to the Board would prevent that order from becoming administratively final while the appeal remains pending. *See* 8 U.S.C. § 1231(a)(1)(B)(i) (removal period begins on "[t]he date the order of removal becomes administratively final"); 8 C.F.R. § 241.1; 8 C.F.R. § 1241.1 (an order of removal entered by an immigration judge becomes final "[u]pon dismissal of an appeal by the Board of Immigration Appeals"). The ninety-day removal period under § 1231(a)(1) would therefore not begin merely upon entry of an adverse decision by the Immigration Judge. The Board's caseload has produced significant adjudication delays, often requiring many months or longer before a decision issues, and were the Board to dismiss an appeal, Petitioner could seek review before the Ninth Circuit, further postponing any final determination regarding removability. The likely consequence of an adverse decision on October 9, 2026 is thus not prompt removal but the continuation of Petitioner's immigration case — and, absent relief from this Court, of his confinement — for a substantially longer period. Petitioner does not contend that he is presently detained under § 1231(a) or that any removal period has begun. His detention followed an interior apprehension and is governed by § 1226. The point is narrower: an interest in

detention cannot rest on the imminence of a removal that no order authorizes and that appellate proceedings would in any event defer.

81. The administrative burden of the process Petitioner says was owed is slight. A § 1226(a) custody hearing is a routine, low-cost proceeding the agency conducts as a matter of course. *Diaz Hernandez* held the Government's interest in detaining "without a pre-deprivation hearing is very low because a bond hearing is routine and can be easily provided." 2026 WL 2281008, at *5 n.2.

82. Each *Mathews* factor therefore weighs in Petitioner's favor. **Because Respondents deprived Petitioner of his protected liberty interest without constitutionally adequate procedures, his detention violates the Due Process Clause of the Fifth Amendment.** This conclusion is not mitigated by the duration of the detention to date; even detention of less than six months may be unconstitutional where, as here, it is imposed without the procedural safeguards due process requires. *See Trinh v. Homan*, 333 F. Supp. 3d 984 (C.D. Cal. 2018).

**D. Under *Saravia*, Re-Detention Required a Neutral Determination of Changed Circumstances, and an Arrest Resolved by Diversion Without a Plea or Conviction Is Not Such a Determination.**

83. Courts in this Circuit have held that **once a noncitizen has been released, federal agents may not re-arrest him absent evidence of materially**

**changed circumstances — namely, evidence that the noncitizen is in fact dangerous, has become a flight risk, or is now subject to a final order of removal.** *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176–77 (N.D. Cal. 2017).

84. *Saravia* is particularly instructive because it arose from facts that closely resemble Petitioner's. The petitioners there entered the United States as unaccompanied minors, were placed in ORR custody, were released by ORR to family sponsors, and were later re-arrested by ICE and confined without a prompt hearing. *Id.* at 1177–78, 1180–81. The court explained that such a release "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk," and held that a later re-arrest "must be based on evidence that the circumstances relevant to that original release decision have changed" — that is, evidence that, notwithstanding the prior determination, the person "is now a danger to himself or the community, or a flight risk." *Id.* at 1176–77, 1196–97. Due process required a prompt hearing before an immigration judge or other neutral decisionmaker at which the government's evidence of changed circumstances could be tested, at which the person and his sponsor could rebut it, and at which the decisionmaker could order a return to the status quo. *Id.* at 1194, 1197–98. The court summarized its holding in terms that map onto this case: "When the federal government has previously deemed an unaccompanied

minor suitable for placement in the community with a sponsor, and when federal agents later arrest and detain the minor based on allegations of gang affiliation, the government cannot simply ship the minor across the country and place him in a secure detention facility for an indefinite period." *Id.* at 1194.

85. Petitioner states the limits of the analogy rather than leaving them for Respondents. *Saravia* concerned minors in ORR custody, and its remedy was framed against ORR's placement obligations under 8 U.S.C. § 1232(c)(2)(A) and against allegations of gang affiliation rather than a charged offense. Petitioner is now an adult and is held by ICE. He does not contend that the statutory framework discussed in *Saravia* governs his present custody, or that *Saravia*'s seven-day hearing deadline applies to him of its own force. But *Saravia* did not invent the rule it applied. It drew that rule from the ordinary practice governing noncitizens released on bond or parole and later re-arrested, under which a showing of materially changed circumstances and a prompt custody hearing are already required. *Id.* at 1176–77, 1196–97 (discussing *Matter of Sugay*, 17 I. & N. Dec. 637 (BIA 1981), and DHS practice). The principle Petitioner invokes is therefore the general rule from which *Saravia* reasoned, applied to a person the federal government released from its own custody to his father.

86. Nor does *J.E.C.M. ex rel. Saravia v. Lloyd* — the decision most often identified as limiting *Saravia* — undercut that reading. *J.E.C.M.* addressed *Saravia* only within a mootness analysis, and it understood *Saravia* to mean that a person the government has released and later re-arrests "would have an entirely new claim based on [the agency's] prior determination, not a reawakened claim challenging the procedures leading to the initial determination." 352 F. Supp. 3d 559, 577 & n.8 (E.D. Va. 2018). That is precisely the claim Petitioner brings: not a challenge to the process that led to his release in 2023, but a challenge to the process Respondents owed him before revoking it in 2026.

87. Petitioner does not argue that nothing changed between August 2023 and April 2026. He was arrested on or about March 31, 2026, and he does not ask this Court to ignore that. His argument is narrower and, he submits, stronger for being stated precisely: an arrest that the state court resolved by judicial diversion, without a guilty plea and without a conviction, is not the same thing as a determination by any neutral decisionmaker that immigration detention is now necessary.

88. The distinction matters under *Saravia* itself. **Where the noncitizen disputes the notion that changed circumstances justify his arrest, he is entitled to a prompt hearing before a neutral decisionmaker.** *Saravia*, 280 F. Supp. 3d at 1176–77. Petitioner disputes it. He is not subject to a final order of removal: his

asylum application is pending and his individual merits hearing is set for October 9, 2026. No neutral immigration custody adjudicator has determined that Petitioner presently poses a risk of nonappearance sufficient to warrant detention. He remained at a known address for approximately two years and eight months, he is pursuing the relief he himself sought, and he remains bound by terms of diversion scheduled for completion on October 2, 2026. And whether the March 31, 2026 incident establishes present dangerousness is the contested question that a hearing exists to answer.

89. Petitioner's circumstances also undermine any inference that detention is necessary to secure his appearance. He entered the United States as a minor, was released by ORR to his father in Ventura on August 11, 2023, and thereafter remained in that community while pursuing asylum relief. His asylum application is now set for an individual merits hearing on October 9, 2026. That hearing gives Petitioner a concrete and immediate incentive to remain available to the Immigration Court and to comply with any conditions of release. He is not seeking to evade proceedings; he is actively pursuing the very relief that will be adjudicated at that hearing.

90. That incentive is reinforced by his state-court disposition. His sole criminal matter was placed into judicial diversion, with successful completion

scheduled for October 2, 2026 subject to compliance. Both his immigration case and his diversion therefore give him concrete reasons to remain in the jurisdiction and to comply with his legal obligations rather than abscond. His family ties point the same way: his father, the sponsor the federal government itself approved, is in the United States, and an aunt supports him.

91. Against that record, the existence of a single arrest — without a guilty plea or conviction — does not itself resolve whether Petitioner presently poses a danger or a flight risk. The relevant question is whether, considering his release history, his government-approved family placement, his pending asylum merits hearing, the diversion disposition, and the absence of any other criminal history, detention is actually necessary. That is precisely the individualized determination Petitioner alleges he never received.

92. To the extent Respondents assert that the arrest, or any other fact, justified detention, that assertion cannot be resolved by Respondents' own unreviewed say-so. Due process exists precisely to test allegations of that kind before liberty is taken, and, based on the records presently available to Petitioner and counsel, Respondents afforded Petitioner no forum in which to answer any.

**E. A Later Bond Hearing Cannot Cure the Completed Pre-Deprivation Violation.**

93. Courts have recognized that a post-deprivation bond hearing cannot cure the constitutional injury caused by unlawful detention. *See Velasquez v. Bondi*, No. 26-cv-01759-GPC-DDL, 2026 U.S. Dist. LEXIS 85165, at *18–19 (S.D. Cal. Apr. 16, 2026); *Nola v. Dep't of Homeland Sec.*, 2026 U.S. Dist. LEXIS 106210, at *29–30 (C.D. Cal. May 13, 2026); *Arturo Hernandez Arechiga v. Bowen*, No. EDCV 26-1516-AS, 2026 U.S. Dist. LEXIS 115840, at *11–12 (C.D. Cal. May 26, 2026). As the court explained in *E.A.T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025), **"such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."**

94. The Northern District has made the same point concretely: "Even if Petitioner received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion; that is, his potentially erroneous detention." *Domingo v. Kaiser*, No. 25-cv-05893 (RFL), 2025 U.S. Dist. LEXIS 133824, at *7 (N.D. Cal. July 14, 2025); *accord Juarez Barrientos v. Moss*, No. 1:26-cv-05943-NW, 2026 WL 2283034 (E.D. Cal. Aug. 7, 2026) (later bond review does not cure a due-process injury inflicted at the outset).

95. *Diaz Hernandez* — which removed jurisdictional uncertainty about the availability of a bond hearing — still concluded that another post-deprivation bond hearing would not cure a due process violation caused by detention without constitutionally adequate pre-deprivation procedures, and ordered immediate release. 2026 WL 2281008, at *4–*6. The same remedial approach appears in two more recent cases. *Palencia-Vargas* ordered the petitioner's immediate release to the same conditions that existed before re-detention and enjoined future re-detention without notice and a pre-detention hearing. 2026 WL 2448311, at *4. *Ranvir S.* likewise granted the habeas petition after previously ordering immediate release and barred future re-detention absent advance notice and a pre-deprivation hearing before a neutral factfinder. 2026 WL 2475510, at *2.

**F. Immediate Release Restoring the Status Quo Ante Is the Appropriate Remedy.**

96. "In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013). "Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters as law and justice require." *Id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)). Federal courts retain "a fair amount of flexibility" in determining the appropriate remedy for unlawful detention. *Burnett v. Lampert*,

432 F.3d 996, 999 (9th Cir. 2005). The traditional remedy for unconstitutional detention is release. *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he traditional function of the writ is to secure release from illegal custody.").

97. Release "is necessary to return him to the status quo," which is "the last uncontested status which preceded the pending controversy" — here, Petitioner's liberty in the community before April 2026. *Diaz Hernandez*, 2026 WL 2281008, at *5. That status was not a bare absence of enforcement. It was a placement the federal government itself investigated, approved, and effected, followed by approximately two years and eight months of residence at a known address and the affirmative pursuit of asylum. *Palencia-Vargas* and *Ranvir S.* confirm that immediate release restoring the pre-detention status quo is an appropriate habeas remedy where a previously released noncitizen is re-detained without the pre-deprivation process the Constitution requires. *Palencia-Vargas*, 2026 WL 2448311, at *4; *Ranvir S.*, 2026 WL 2475510, at *2.

98. **Immediate release is especially appropriate because Petitioner's immigration proceedings and asylum application remain pending. Release would neither terminate nor interfere with them.** Petitioner remains subject to the authority of the Immigration Court, has every incentive to continue pursuing

the asylum claim he himself filed, and can appear at his October 9, 2026 individual hearing while living in the community. Release would also permit him to complete the terms of his diversion, which are scheduled for completion on October 2, 2026.

99. Alternatively, should the Court decline to order immediate release and instead direct Respondents to provide an individualized custody hearing under 8 U.S.C. § 1226(a), Petitioner respectfully requests that the Court prescribe the constitutional procedures governing that hearing: sufficient advance notice; a meaningful opportunity to present evidence and argument with counsel present; a neutral decisionmaker; consideration of whether conditions short of detention can reasonably address any identified risk; consideration of Petitioner's ability to pay if a monetary bond is imposed; a written statement of reasons sufficient to permit meaningful review; and placement upon Respondents of the burden of proving, by clear and convincing evidence or such other standard as controlling authority requires, that Petitioner presently poses a danger to the community or a risk of flight that cannot reasonably be addressed through conditions of release. *See Ranvir S. v. Andrews*, No. 1:26-cv-00774-TLN-CSK, 2026 WL 2475510, at *2 (E.D. Cal. Aug. 24, 2026); *Palencia-Vargas v. Rios*, No. 5:26-cv-04471-DTB, 2026 WL 2448311, at *4 (C.D. Cal. Aug. 20, 2026); *Hernandez v. Sessions*, 872 F.3d 976, 990, 994 (9th Cir. 2017).

**G. A Unilateral Release Would Not Moot Petitioner's Claims for Declaratory and Injunctive Relief.**

100. Petitioner seeks relief that a discretionary release would not supply: a declaration that his re-detention without pre-deprivation process violated the Fifth Amendment, and individualized injunctive relief barring re-detention without notice and a hearing before a neutral decisionmaker. *See infra* Prayer for Relief (e), (g). Those requests preserve a live controversy that a unilateral release would not extinguish. *Cf. J.E.C.M. ex rel. Saravia v. Lloyd*, 352 F. Supp. 3d 559, 576–77 (E.D. Va. 2018) (claims of released minors were moot where they "ha[d] not stated claims for retrospective forms of relief that could preserve their claims even after release").

## VIII. CAUSES OF ACTION

**Count I — Fifth Amendment Procedural Due Process: Re-Detention Without Pre-Deprivation Notice or an Individualized Determination**

101. Petitioner incorporates by reference each preceding paragraph.

102. Respondents violated and continue to violate Petitioner's due process rights by detaining him after approximately two years and eight months of liberty in the community — liberty that began with the federal government's own decision

to release him from custody to his father — without providing any notice, any hearing, or any opportunity for an individualized determination of whether detention is justified.

103. Petitioner's release from federal custody created a protected liberty interest in his continued freedom. *See Zadvydas v. Davis*; *Young v. Harper*; *M.B. v. Noem*; *Zapata v. Kaiser*. That interest is independently reinforced by the length of his residence and the family and community ties he developed in Ventura County. *See Diaz Hernandez v. Blanche*; *Vallejo v. Warden*; *Tinoco v. Noem*. Respondents could not extinguish that liberty without meaningful procedural safeguards, including notice and a determination before a neutral decisionmaker.

104. Based on the records presently available to Petitioner and counsel, Respondents detained Petitioner in April 2026 without any hearing preceding the detention. As a result, Petitioner has received no individualized determination of whether he poses a danger to the community or a flight risk, and no adjudicator has considered whether conditions short of detention would address any identified risk. That denial of process violates the Fifth Amendment. Due process requires a meaningful opportunity to be heard before the Government deprives an individual of an established liberty interest, and that requirement is not satisfied by categorical rules that foreclose any hearing.

105. The disposition of Petitioner's sole criminal matter heightens rather than diminishes the need for that process. The matter was resolved by judicial diversion on April 2, 2026 without a guilty plea and without a conviction, and it is scheduled for completion on October 2, 2026. Whether that incident established present danger or risk of flight sufficient to justify confinement was a contested question requiring individualized evaluation by a neutral decisionmaker before Petitioner was jailed. *Saravia* imposed precisely that requirement where the government re-arrested persons it had earlier released from federal custody to family sponsors. *Saravia v. Sessions*, 280 F. Supp. 3d at 1176–77, 1196–98.

106. *Rodriguez-Vazquez v. Bostock* resolves the statutory framework governing interior apprehensions, but it does not cure the constitutional injury alleged here. That injury occurred when Respondents deprived Petitioner of his established liberty without the pre-deprivation procedures required by the Fifth Amendment, and it continues for each day he remains detained as a result of that deprivation.

**Count II — Detention Contrary to 8 U.S.C. § 1226(a)**

107. Petitioner incorporates by reference each preceding paragraph.

108. Respondents have not provided Petitioner or counsel with a Form I-213, Form I-286, or other custody record identifying the statutory provision

under which DHS claims to detain Petitioner. Those records remain within Respondents' possession and control. Petitioner therefore pleads this Count based on the facts presently known and the governing law applicable to those facts.

109. Under *Rodriguez-Vazquez v. Bostock*, noncitizens present without admission who are apprehended in the interior of the United States are subject to the detention regime of 8 U.S.C. § 1226, rather than mandatory detention under 8 U.S.C. § 1225(b)(2)(A). Petitioner was taken into immigration custody in April 2026 in Ventura County, California, approximately two years and eight months after federal authorities released him from custody into the community. He was not apprehended at the border and was not intercepted while seeking admission. On the facts presently known, his detention is therefore governed by § 1226.

110. Section 1226(a) provides a discretionary custody framework under which detention is subject to individualized custody consideration. To the extent Respondents have detained Petitioner under § 1225(b)(2), or otherwise treated him as categorically ineligible for custody review based solely on his manner of entry, that detention is contrary to *Rodriguez-Vazquez* and federal law.

111. Petitioner therefore requests that the Court declare that his present interior detention is governed by 8 U.S.C. § 1226 and order such further relief as is

necessary to ensure that Respondents apply the custody procedures required under that statutory framework.

**Count III — In the Alternative, Entitlement to a Prompt Constitutionally Adequate § 1226(a) Custody Hearing**

112. Petitioner incorporates by reference each preceding paragraph.

113. Petitioner maintains that immediate release restoring the pre-detention status quo is the appropriate remedy for the completed pre-deprivation violation alleged in Count I. In the alternative, should the Court decline to order immediate release, Petitioner is entitled to a prompt individualized custody hearing under 8 U.S.C. § 1226(a).

114. To provide meaningful constitutional protection, any court-ordered custody hearing should occur promptly before a neutral decisionmaker; permit Petitioner to be represented by counsel and to present evidence; require consideration of alternatives to detention and of Petitioner's ability to pay if a monetary bond is imposed; require a written and reasoned decision; and require Respondents to establish, by clear and convincing evidence or such other standard as controlling authority requires, that detention is necessary because Petitioner presently poses a danger to the community or a risk of flight that cannot reasonably be addressed through conditions of release.

115. This alternative request does not concede that a post-detention hearing cures the constitutional violation alleged in Count I. It seeks alternative relief only if the Court declines to restore Petitioner to the liberty he possessed before April 2026.

## **IX. PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that this Court:

(a) Assume jurisdiction over this matter;

(b) Order Respondents to show cause why the writ should not be granted, on an expedited schedule;

(c) Order Respondents not to remove or transfer Petitioner outside the jurisdiction of this Court pending resolution of this Petition;

(d) Declare that, under the facts alleged and controlling law, Petitioner's present interior detention is governed by § 1226 rather than mandatory detention under § 1225(b)(2);

(e) Declare that Petitioner's detention without pre-deprivation notice and an individualized determination before a neutral decisionmaker violated the Fifth Amendment's Due Process Clause;

(f) Grant the writ of habeas corpus and order Respondents to IMMEDIATELY RELEASE Petitioner from custody subject to reasonable

conditions of supervision as the Court deems appropriate, and order Respondents to return any property and documents confiscated from Petitioner in connection with his detention;

(g) As individualized relief with respect to Petitioner, and to the extent authorized by 8 U.S.C. § 1252(f)(1), enjoin Respondents from re-arresting or re-detaining Petitioner under 8 U.S.C. § 1226 absent compliance with constitutional protections, including reasonable advance notice of the basis for the proposed re-detention and a pre-deprivation hearing before a neutral decisionmaker at which Respondents bear the burden of demonstrating that Petitioner presently poses a danger to the community or a risk of flight that cannot reasonably be addressed through conditions of release;

(h) In the alternative, if the Court declines to order immediate release, order Respondents to provide Petitioner a prompt individualized custody hearing under 8 U.S.C. § 1226(a) before a neutral Immigration Judge, with counsel permitted to appear, a meaningful opportunity to present evidence and argument, consideration of reasonable alternatives to detention, consideration of Petitioner's ability to pay if a monetary bond is imposed, the Government bearing the burden of proof under the standard required by controlling authority, and a written, reasoned decision

expressly identifying and applying the governing standard; and order Petitioner released if the hearing is not timely provided;

(i) Order Respondents to file a notice of compliance within three (3) days of entry of judgment;

(j) Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Cesar O. Montoya (SBN: 320291)
MCM LAW GROUP, P.C.
206 W. 4th St Suite 437
Santa Ana, CA 92701
Phone: (714) 732-0287
Email: cesar@mcmlawpc.com
Counsel for Petitioner

Dated: September 18, 2026

**PROOF OF SERVICE**

I hereby certify that on September 18, 2026, I served a copy of the attached PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS, by EMAIL DELIVERY to:

U.S. Attorney's Office:

**USACAC.ImmHabeas@usdoj.gov**

I declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

/s/ Cesar O. Montoya (SBN: 320291)
MCM LAW GROUP, P.C.
206 W. 4th St Suite 437
Santa Ana, CA 92701
Phone: (714) 732-0287
Email: cesar@mcmlawpc.com
Counsel for Petitioner

Dated: September 18, 2026